Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
Email: oatamoh@nevadafirm.com
COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:   702/791-0308
Facsimile:    702/791-1912
*Attorney for Robert Andrew Rose*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT ANDREW ROSE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WASHTRONICS OF AMERICA, a Nevada corporation; KEN PRAZNIUK, an individual; CHRIS MEDLAND, an individual; FRONTIER CAPITAL PARTNERS LIMITED PARTNERSHIP, a Canadian limited partnership; MERCOR MANAGEMENT, INC., a Canadian corporation; RICHARD GUY GIRARDIN, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br>**(Declaratory Relief; Subordination of Claims of Frontier under 11 U.S.C. § 510(c); Fraudulent Misrepresentation of Defendants Washtronics, Girardin, Mercor, Prazniuk and Medland)** |

Plaintiff ROBERT ANDREW ROSE ("Rose", alternatively the "Plaintiff"), by and through his counsel, the law firm of Cotton, Driggs, Walch, Holley, Woloson & Thompson, hereby complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334, and Rule 1001(b)(2) of the Local Rules of Practice for the United States District Court for the State of Nevada.

2. Venue is proper pursuant to 28 U.S.C. § 1409(a).

09363-01/1052194.doc

3. This is a core proceeding under 28 U.S.C. §§ 1331, 1334, 28 U.S.C. § 157(b)(2)(K), Title 11 of the United States Code, and is brought pursuant to 11 U.S.C. § 510(c) and Rules 7001(2), (8) and (9) et seq., of the Federal Rules of Bankruptcy Procedure. If the Court should find that this is not a core proceeding, the Plaintiff consents to entry of final judgment by the Court.

## THE PARTIES

4. Plaintiff Rose is and was at all relevant times a secured creditor in the above-captioned case and a resident of Canada.

5. Washtronics of America ("Washtronics" or the "Debtor") is and was at all relevant times the debtor in the above-referenced bankruptcy case and a Nevada corporation.

6. Frontier Capital Partners Limited Partnership ("Frontier") is and was at all relevant times a Canadian limited partnership doing business in Winnipeg, Manitoba, Canada.

7. Ken Praznuik ("Praznuik") is and was at all relevant times an individual residing in Canada and at all relevant times an officer of the general partner of Frontier.

8. Chris Medland ("Medland") is and was at all relevant times an individual residing in Canada and at all relevant times an officer of the general partner of Frontier and managing director of Frontier.

9. Mercor Management, Inc. ("Mercor") is and was at all relevant times a Canadian corporation and at all relevant times the general partner of Frontier.

10. Richard Guy Girardin is and was at all relevant times an individual residing in Las Vegas, Nevada, and at all relevant times the President of Washtronics.

## GENERAL ALLEGATIONS

11. Rose first began dealing with Frontier in 2009 when Rose purchased a building in his home town of St. Francois Xavier, Manitoba, Canada, from, and then leased back to, Westward Industries Ltd. ("Westward"), a company owned by Frontier. In that transaction, Rose dealt with Praznuik and Medland as officers of Westward and as officers of the general partner of Frontier.

. . .

- 2 -

09363-01/1052194.doc

12. Defendant Washtronics is a wholly owned subsidiary of Washtronics Canada Inc. ("WCI"), the shares of which were owned at all relevant times as follows:

| | |
|---|---|
| Frontier | 45% |
| Manitoba Capital Fund Limited Partnership ("MCF") | 30% |
| Guy Girardin ("Girardin") | 25% |

13. MCF is and was at all relevant times a limited partnership formed under the laws of the Province of Manitoba, Canada, and Praznuik is and was at all relevant times the President and a director of its general partner, Mercor.

14. Frontier is and was at all relevant times a limited partnership formed under the laws of the Province of Manitoba, Canada, and Praznuik is and was at all relevant times the President and a director of its general partner, Mercor.

15. Girardin was at all relevant times the President and the sole director of Defendant Washtronics.

16. At all relevant times, the officers and directors of WCI were as follows:

| | |
|---|---|
| President: | Praznuik |
| Secretary: | Medland |
| Directors: | Praznuik<br>Medland<br>Girardin |

17. In January of 2010, the Debtor, Girardin, Mercor and Praznuik solicited Rose to enter into a series of loans and advance money to Defendant Washtronics on terms set out in loan documents (the "Initial Loan Documents") which, upon information and belief, were prepared by the Winnipeg, Manitoba, Canada law firm of Fillmore Riley LLP acting on behalf of Frontier.

18. Girardin and Praznuik, while representatives of the Debtor, Mercor, Frontier and MCI, respectively, induced Rose to loan money to Washtronics by promising that Rose would have a "first charge" priority security interest against certain personal property of Washtronics. The personal property that was to form Rose's security was eventually specified to be the truck washing gantries built and maintained by Washtronics for use at its customer's sites. At no time

1  during these discussions did either Girardin or Praznuik disclose to Rose any prior security
2  granted by Washtronics and being in place or registered against the gantries or, for that matter,
3  anything else, by either of Frontier or MCF.

4      19.    During a sworn deposition of Praznuik, conducted on June 21, 2012, Praznuik
5  testified repeatedly, under penalty of perjury, that it was always the intent that Rose hold a first
6  charge on the gantries owned by Washtronics.

7      20.    During the deposition of Praznuik, Praznuik testified that in connection with the
8  loans from Rose to Washtronics, and once Rose became aware of the prior registrations by
9  Frontier and MCF, Rose was promised "priority over Frontier and MCF".

10     21.    Additionally, Praznuik testified that the documents granting Rose a first charge
11 were executed and that a first charge was effectuated against the gantries in favor of Rose, and
12 that Praznuik believed this to be true based upon representations Girardin made to Praznuik.

13     22.    Praznuik testified that he is a director and officer of Mercor, and that Mercor was
14 the general partner and fund manager for Frontier, and was replaced as Frontier's fund manager
15 in September 2011.

16     23.    Praznuik further testified that he is a director and officer of MCF Capital Inc. and
17 MCF Management Inc., and that MCF Management Inc. is a management company that has held
18 the management contract to manage MCF since 1994.  In connection with the extent of
19 Frontier's and MCF's collateral, Praznuik testified that he believed that the first charge position
20 of both MCF and Frontier only related to Washtronic's collateral in Nevada, and that the
21 modified loan documents dated June 30, 2011, related to "different" and "new" collateral to
22 ensure the value of the collateral remained within the margin of the loan extended by Rose to
23 Washtronics.

24     24.    Praznuik testified that he did not disclose his interest in MCF to Rose, and his
25 Canadian counsel, Attorney Filkow, instructed Praznuik not to respond to the question regarding
26 whether he disclosed to Rose his interest in Frontier.  Praznuik testified that he did not disclose
27 to Rose the security interests of Frontier and MCF granted by Washtronics.
28 . . .

- 4 -

09363-01/1052194.doc

25. Based on the representation of Girardin and Praznuik, in February of 2010, Rose agreed to and did loan to Defendant Washtronics the amounts of $123,369.05 and $140,640.71, respectively, on the security of two truck washing gantries, and the associated wash service agreements between Defendant Washtronics and its customer, Penske Truck Leasing Co., L.P. ("Penske").

26. Subsequently, during the period up to January 2011, Rose agreed to and did advance further term loans on similar terms, one for each additional truck washing gantry and the associated wash service agreements with Penske, and subsequently with another customer of Defendant Washtronics, Winco Foods, L.L.C. ("Winco").

27. As Rose made further loan advances, the Initial Loan Documents were replaced or added to by successive Promissory Notes and Loan Agreements, Security Agreements, and Assignment of Leases, amended in the schedules to add the respective term loans and collateral security.

28. Specifically, Rose was sent a package via email on August 13, 2010, that included a Promissory Note and Loan Agreement dated August 11, 2010, and signed by Defendant Washtronics.

29. Further, a final loan agreement representing thirteen term loans (the "Final Loan Agreement"), was delivered to Rose by Girardin, which was signed by Girardin on behalf of Defendant Washtronics and by Praznuik and Medland on behalf of WCI.

30. Upon information and belief, the Final Loan Agreement was signed in mid-November 2010 or early December 2010 and no later than mid-November 2010 or early December 2010.

31. During this period, Rose was unrepresented by legal counsel and relied upon promises and representations from the Debtor, Mercor, Praznuik, Medland, Girardin and Fillmore Riley LLP (per Lionel J. Martens as primary counsel therefor) that Washtronics would attend to perfecting the first priority security interests that Washtronics had agreed to grant to Rose.

. . .

32. All of the loan agreements up to and including the Final Loan Agreement, contain the following representation:

> 3.01 **Representations and Warranties**. Each of the Borrower and the Guarantor represents and warrants to the Lender as follows:…
>
> (d) *Title:* The Borrower has, and when it executes and delivers the Loan Documents, will have good and unencumbered title to the Equipment subject only to the Lease of such Equipment and the security constituted by the Loan Documents.

33. Rose expressly and detrimentally relied upon those representations as well as the oral representations made by the Debtor, Mercor, Girardin and Praznuik regarding a first priority security interest in Washtronics' assets in advancing funds to the Defendant Washtronics as it was a condition precedent for him to do so.

34. All of the loan agreements also contained the following negative covenant:

> 4.02 **Negative Covenants**. The Borrower covenants and agrees with the Lender that so long as any amount payable hereunder remains outstanding, the Borrower shall:…
>
> (b) *Not to Create Certain Charges:* Without the prior written consent of the Lender, not create or suffer to exist any charge or encumbrance over all or any substantial portion of the Equipment ranking or purporting to rank prior to or *pari passu* with the charges hereof and will not permit any subsidiary to mortgage, charge or otherwise encumber any of its property or assets or issue any bonds, debentures, shares or other securities, except to the Borrower.

35. Rose expressly and detrimentally relied upon the covenants set out above in the loan agreements and the representations made by the Debtor, Mercor, Girardin and Praznuik when entering into these transactions.

36. In November of 2010, Girardin informed Rose that Defendant Washtronics would be unable to make the loan payments due on December 1, 2010, and Rose agreed to forbear enforcing his loans and foreclosing on his security.

37. In order to continue forbearing from enforcement of the Rose loans and foreclosing on Rose's security, Rose requested Defendant Washtronics to provide evidence to Rose that they had perfected the security interests they had promised to grant to Rose.

38. In response, Defendant Washtronics provided Rose with a UCC Financing Statement which it had filed on April 26, 2011, with the Office of the Secretary of State of Nevada with respect to the thirteen sets of wash equipment which were the subject of the equipment securities agreement promised under the final loan agreement.

39. In April 2011, Rose retained his own legal counsel in Winnipeg, Manitoba, Canada, to review his rights in this matter and, as a result of the searches initiated by Rose's legal counsel, Rose was first informed at that time of the existence of certain debentures granted by Defendant Washtronics to Frontier and Manitoba Capital, and of their purported registered priority interest to the UCC Financing Statement filed by Defendant Washtronics for Rose contrary to the promises and assurances made by Praznuik, Medland, and Girardin together with the express representations and covenants contained in the loan agreements, all of which Rose relied on in advancing the funds to Defendant Washtronics.

40. In order to rectify the defaults by Defendant Washtronics under the Final Loan Agreement, Rose agreed with Defendant Washtronics and Frontier to enter into an amended and restated loan agreement and security documents, and to enter into a subordination or priorities agreement with Frontier and MCF.

41. Throughout this process, Praznuik was a representative of Frontier and MCF, and Defendant Washtronics and MCF and Frontier were still represented by the law firm of Fillmore Riley LLP.

42. An amended and restated loan agreement and security documents were not executed and delivered to Rose until June 30, 2011 (the "<u>Amended and Restated Loan Documents</u>").

43. Praznuik promised Rose that a Board of Directors meeting had been called for the same day to approve the granting of a priorities and subordination agreement which would have subordinated the Frontier security interests in the collateral under the Amended and Restated Loan Documents to Rose's security interests, and Praznuik represented to Rose that the only reason he could not enter into a similar priorities and subordination agreement or subordination on behalf of MCF was that a dispute between the shareholders of the General Partner of MCF

09363-01/1052194.doc

that was unconnected with this matter prevented the Board of Directors from authorizing any transactions.

44. These promises and representations were made to Rose in the course of a meeting on June 30, 2011 when Defendant Washtronics requested on an urgent basis that Rose make a further loan advance of $55,000.00 and extend by $135,000.00 the demand loan facility provided in the Amended and Restated Loan Documents.

45. Rose relied upon these promises and representations in agreeing to make such further advances pursuant to an Addendum #1 to the Amended and Restated Loan Documents dated July 15, 2011.

46. Despite express promises and assurances from Praznuik that the same would be accomplished, the priorities and subordination agreement was not reduced to writing as agreed, and was not provided to Rose or his counsel before or since that time, despite demands for same.

47. In August 2011, when Rose visited the factory of Defendant Washtronics to review its financial affairs with Girardin, he admitted to Rose that the two Washtronics profiling wash systems listed as Items 14 and 15 in Schedule "B" to the amended and restated loan agreement and Schedule "A" to an equipment security agreement that formed part of the Amended and Restated Loan Documents, and identified by serial nos. 2011160 and 2011161, did not exist contrary to representations made to Rose and despite Rose having advanced $549,525.78 specifically on account of their manufacture.

48. Consequently Rose refused to make any further advances under the demand loan facility extension provided by the Addendum No. 1 to the Amended and Restated Loan Documents, and commenced actions to enforce Rose's security.

49. Subsequently Rose was informed by a chemical supplier of Defendant Washtronics, A.P. Formulators, that in August 2011, Defendant Washtronics, without Rose's knowledge or approval, presented it with an application for credit that purported to pledge Rose's credit jointly with Defendant Washtronics, and used this to obtain $26,000.00 worth of chemical supplies which are currently unpaid.

. . .

- 8 -

09363-01/1052194.doc

50. All loans to Defendant Washtronics were made by Rose alone and in Rose's name alone.

51. Rose's father, known as Bob Rose Sr., ("Rose Sr.") is over 80 years of age, and at the material times was retired from active business activities. Despite knowing this, Girardin and Praznuik encouraged and induced Rose Sr. to become involved in the business of Defendant Washtronics by offering Rose Sr. shares in Defendant Washtronics, by issuing business cards of Defendant Washtronics in Rose Sr.'s name with the title of "Executive Vice President, Strategic Planning", by introducing Rose Sr. as such at Defendant Washtronics' staff Christmas party on December 9, 2010 and by asking for Rose Sr.'s assistance in their business planning.

52. Neither Rose nor Rose Sr. requested any of these titles, introductions or invitations.

53. Rose Sr. became very enthusiastic about the prospects of Defendant Washtronics based upon the inducements as aforementioned, and his enthusiasm for Defendant Washtronics resulted in Rose's forbearance from enforcing Rose's security interests after Defendant Washtronics defaulted in making its loan payment starting December 1, 2010.

54. However, in August of 2011, Rose commenced enforcement actions against Defendant Washtronics for its repeated defaults under the Amended and Restated Loan Documents. Despite undertaking such demands and actions to date, no recovery of any funds advanced by Rose to Defendant Washtronics has been made.

55. On July 27, 2012, MCF filed with the Bankruptcy Court a Stipulation and Order Regarding Priority of Claims (the "Stipulation") [Dkt. No. 262].

56. Pursuant to the Stipulation, MCF stipulated with Rose that the MCF Secured Claim in the amount of approximately $763,000 as more particularly stated on Schedule D of the Bankruptcy Petition shall be subordinate in priority to the Rose Secured Claim in the amount of approximately $3,009,000 as more particularly stated on Schedule D of the Bankruptcy Petition with respect to any personal property of the Debtor which is the subject of the UCC registrations by Rose in the State of Nevada. See Stipulation [Dkt. No. 262].

. . .

- 9 -

09363-01/1052194.doc

57. Thus, Rose is seeking an adjudication as to priority against Frontier only, as MCF has stipulated that its Secured Claims against the Debtor are subordinate in priority to Rose's Secured Claims against the Debtor.

### FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

58. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 as though fully set forth herein.

59. Plaintiff seeks an order from this Court for declaratory relief ruling that Plaintiff's UCC Financing Statement filed by Defendant Washtronics in favor of Rose has priority and seniority over the debentures granted by Defendant Washtronics to Frontier evidenced by its purported registered priority interest.

60. Plaintiff further seeks an order from this Court for declaratory relief ruling that the claims Frontier purportedly holds against Debtor's assets are subordinate to the senior claims of Rose against the same assets, which claims arise under the UCC Financing Statement filed by Defendant Washtronics in favor of Rose.

61. Plaintiff further requests declaratory relief and a finding by this Court that Rose will suffer damages to the extent Rose's claims against the Defendant Washtronics' assets are deemed junior to the claims of Frontier.

62. Plaintiff further requests declaratory relief and a finding by this Court that Rose is entitled to the entry of an order finding that Rose's claims against the Defendant Washtronics' assets are senior and prior to the purported claims of Frontier against Defendant Washtronics' assets.

63. It has been necessary for the Plaintiff to retain counsel to bring this action, and the Plaintiff is entitled to legal fees and costs.

### SECOND CLAIM FOR RELIEF

### (Subordination of Claims of Frontier under 11 U.S.C. § 510(c))

64. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 as though fully set forth herein.

65. At all relevant times, Defendants Washtronics, Girardin, Mercor, Praznuik and Medland, on behalf of Frontier, persuaded Rose to lend money to Westward and to Defendant Washtronics, which they introduced to Rose as another company indirectly owned and controlled by Frontier.

66. In order to induce Rose to advance loans, Defendant Washtronics represented to Rose that at the time Defendant Washtronics executed and delivered the Loan Documents, that Defendant Washtronics had good and unencumbered title to the Equipment that serves as Rose's collateral, subject only to the Lease of such Equipment.

67. In order to induce Rose to advance loans, Defendant Washtronics falsely represented to Rose that at the time Defendant Washtronics executed and delivered the Loan Documents, that Defendant Washtronics would not create or suffer to exist any charge or encumbrance over all or any substantial portion of the Equipment that serves as Rose's collateral, and that Defendant Washtronics would not permit any subsidiary to mortgage, charge or otherwise encumber any of its property or assets or issue any bonds, debentures, shares or other securities, except to Defendant Washtronics.

68. At all relevant times, Defendants Washtronics, Girardin, Mercor, Praznuik and Medland made representations to Rose that its claim against the Debtor's assets would be senior and prior claims against the Debtor's assets.

69. Defendant Washtronics filed the UCC Financing Statement in favor of Rose to induce Rose to believe he held prior and senior claims against Defendant Washtronics assets.

70. Plaintiff subsequently learned that the Defendant Washtronics granted debentures to Frontier and Manitoba Capital that purported to grant Frontier and Manitoba Capital registered priority interests senior to Rose's interest in Defendant Washtronics's assets.

71. Based upon the false representations made to Rose by Defendants Washtronics, Girardin, Mercor, Praznuik and Medland, and the subsequent loans advanced by Rose as a result of these representations, it would be unjust and inequitable for Frontier and Manitoba Capital to hold senior claims to Rose's claims against Defendant Washtronics.

. . .

09363-01/1052194.doc

72. Based upon the false and misleading representations made to Rose by Defendants Washtronics, Girardin, Mercor, Praznuik and Medland, and the subsequent loans advanced by Rose as a result of these representations, the purported claims of Frontier should be deemed subordinated to Rose's claims, and Rose should be deemed to have taken an equity position when he advanced funds to Defendant Washtronics.

73. Under the circumstances, it is appropriate for this Court to subordinate all of the claims of Frontier to the claims of Rose under principles of equitable subordination pursuant to Section 510(c) of the Bankruptcy Code, as Rose has been injured by the conduct of Frontier and Manitoba Capital, the holders of the claims sought to be subordinated by Rose.

74. Rose is entitled to the entry of an order finding that subordination is appropriate in this instance because Frontier is a creditor of Debtor's Bankruptcy Estate, and for reasons of equity, Frontier should be relegated to a rank inferior to that of Rose's claims against the estate.

75. Rose will suffer damages to the extent the claims held by Frontier is not subordinated and deemed junior to Rose's claim.

76. It has been necessary for the Plaintiff to retain counsel to bring this action and the Plaintiff is entitled to legal fees and costs.

### THIRD CLAIM FOR RELIEF

**(Fraudulent Misrepresentation of
Defendants Washtronics, Girardin, Mercor, Praznuik and Medland)**

77. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 76 as though fully set forth herein.

78. In January of 2010, Defendants Washtronics, Girardin, Mercor, Praznuik and Medland made false representations to Rose that Defendant Washtronics had good and unencumbered title to the Equipment that serves as Rose's Collateral, subject only to the Lease of such Equipment.

79. In order to induce Rose to advance loans, Defendant Washtronics represented to Rose that at the time Defendant Washtronics executed and delivered the Loan Documents, that Defendant Washtronics would not create or suffer to exist any charge or encumbrance over all or

any substantial portion of the Equipment that serves as Rose's Collateral, and that Defendant Washtronics would not permit any subsidiary to mortgage, charge or otherwise encumber any of its property or assets or issue any bonds, debentures, shares or other securities, except to the Defendant Washtronics.

80. Defendants Washtronics, Girardin, Mercor, Praznuik and Medland had knowledge and belief that these representations to Rose were false.

81. Defendants Washtronics, Girardin, Mercor, Praznuik and Medland intended to induce Rose to act upon these misrepresentations to persuade Rose to lend money to Westward and to Defendant Washtronics.

82. As a result of relying upon the misrepresentations of Defendants Washtronics, Girardin, Mercor, Praznuik and Medland, Rose acted to his detriment by loaning money to Westward and to Defendant Washtronics.

83. Plaintiff suffered damages as a result of his detrimental reliance on the misrepresentations Defendants Washtronics, Girardin, Mercor, Praznuik and Medland.

84. It has been necessary for the Plaintiff to retain counsel to bring this action and the Plaintiff is entitled to legal fees and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered as follows:

1. Judgment for declaratory relief pursuant to the First Claim for Relief that Plaintiff Rose's claims against Defendant Washtronics' assets are prior and superior to the claims of Frontier and Manitoba, which claims are subordinated to Rose's claims to Defendant Washtronics' assets;

2. Judgment against Defendants Frontier and MCF in favor of Plaintiff subordinating all of the claims of Frontier and MCF to the claims of Rose under principles of equitable subordination pursuant to Section 510(c);

3. Judgment for damages to be determined by this Honorable Court as against Defendants Washtronics, Girardin, Mercor, Praznuik and Medland for fraudulent misrepresentations made to Plaintiff Rose that he would hold a senior priority interest in

1  Defendant Washtronics' assets to induce Plaintiff Rose to advance a series of loans to Defendant
2  Washtronics; and
3      4.   For an award of costs of suit, prejudgment and postjudgment interest to the extent
4  permitted by law, and such other and further relief as is just and proper.
5      DATED this 2nd day of April, 2013.

                                                **COTTON, DRIGGS, WALCH,**
                                                **HOLLEY, WOLOSON & THOMPSON**

                                                */s/ Richard F. Holley*
                                                Richard F. Holley, Esq.
                                                Nevada Bar No. 3077
                                                Ogonna M. Atamoh, Esq.
                                                Nevada Bar No. 7589
                                                400 South Fourth Street, Third Floor
                                                Las Vegas, Nevada 89101

                                                *Attorneys for Robert Andrew Rose*

09363-01/1052194.doc